[No. 22327-5-I.   Division One.   December 18, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. LAWRENCE H. LARSON, JR., *Appellant*.

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Barbara Linde, Deputy,* for respondent.

WEBSTER, J.—Lawrence Larson, Jr., appeals an amended judgment and sentence imposing concurrent sentences

within the standard range after this court ruled that consecutive sentences were erroneously imposed under the Sentencing Reform Act of 1981 (SRA) because findings and conclusions had not been entered to support an exceptional sentence. Larson argues that his due process and double jeopardy rights were violated because the longest concurrent sentence, 360 months, exceeds the 281–month consecutive sentence originally imposed on the same count. The total time imposed on remand, 360 months, is less than the aggregate period of incarceration ordered originally, 363 months.

## FACTS

Larson was convicted of first degree murder, second degree rape, and first degree arson for events which occurred on the night of February 18, 1985. He had suspected his wife, Rose, of having an affair with another man. He decided to kill her and himself. On the night in question, he changed his mind and attacked Rose's two children from another marriage. He stabbed her 12–year–old son while the latter lay in bed. The boy suffered extensive wounds indicating a prolonged struggle. In another room of the same house, he forced Rose's 13–year–old daughter to have sex with him. The jury convicted Larson of second degree rape based on the force used, not the victim's age. After the rape, Larson set the house on fire and left the scene.

### Original Sentencing

Larson had no criminal history, but the court calculated the standard range for each offense by treating the other two as criminal history. *See* RCW 9.94A.400(1)(a). The standard range for the murder was 281 to 374 months, and for the rape and arson, 41 to 51 months each. The State recommended concurrent sentences of 60 years for the murder and 10 years each for the rape and arson. It argued that an exceptional sentence was warranted because the crimes manifested deliberate cruelty and the victims were

particularly vulnerable. *See* RCW 9.94A.390(2)(a), (b). The defense urged a standard–range sentence.

The court commented that the murder was "egregious" and sentenced Larson "to life" for the murder and rape and "ten years" for the arson. The court apparently intended to set maximum terms as prescribed by pre–SRA law. *See* RCW 9.95.010. The court said it was "trying" to sentence Larson within SRA guidelines and chose consecutive sentences of 281, 41, and 41 months. The court concluded, "[t]hat works out to be 30 years in the penitentiary." The 363–month total was 30 years 3 months.

Defense counsel said he did not understand the order for consecutive sentences. The court responded, "*It* will run consecutively." (Italics ours.) Previously, defense counsel indicated that consecutive sentences required exceptional sentence findings. Counsel did not reiterate this when the court announced Larson's sentence.

### Prior Appeal

On appeal, this court affirmed Larson's convictions. The State conceded it was error to impose consecutive sentences without findings supporting an exceptional sentence. *See* RCW 9.94A.400(1)(a). The State asked that the case be remanded for entry of those findings. Larson requested a mandate that the sentences run concurrently. This court said it would not "remove the discretion from the trial court in whether or not an exceptional sentence should be imposed." The court remanded "for resentencing permitting the trial court to enter appropriate findings of fact and conclusions of law." *State v. Larson,* unpublished opinion noted at 49 Wn. App. 1075 (1987).

### Resentencing

On remand, the State initially urged the court to enter findings supporting the consecutive sentences. Defense counsel objected, noting the court's original intent to follow SRA guidelines. Counsel understood this to be a rejection of the State's request for an exceptional sentence. Later, the State noted that the sum of the consecutive sentences,

363 months, was within the standard range for the murder conviction. The State felt this was the amount of time the court originally intended Larson to serve. The court said it had originally intended to sentence Larson to a total of 30 years, and that the consecutive sentences were merely a means of achieving that end. It agreed with the State that the sentences should run concurrently and that a standard range sentence should be imposed. The State suggested 363 months for the murder, to which the court said, "Make it 360. That's 30 years." The court entered findings and conclusions corresponding to its oral decision.

### ENHANCEMENT OF SENTENCE ON REMAND

Larson claims he was denied due process and subjected to double jeopardy when the trial court "increased" his consecutive murder sentence from 281 months to a concurrent sentence of 360 months.

### Due Process

In support of his due process argument, Larson relies on a presumption of vindictiveness which is said to arise when a judge imposes a more severe sentence following a partially successful appeal. *See North Carolina v. Pearce,* 395 U.S. 711, 726, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). This raises the question whether Larson's murder sentence was increased on remand. Federal courts addressing the issue uniformly hold that the *Pearce* presumption never arises when the *aggregate* period of incarceration remains the same or is reduced on remand. *See United States v. Cochran,* 883 F.2d 1012 (11th Cir. 1989) (concurrent sentences improperly enhanced to 30 years originally, replaced on remand with unenhanced concurrent and consecutive sentences totaling 25 years); *United States v. Pimienta–Redondo,* 874 F.2d 9 (1st Cir.) (en banc) (consecutive sentences replaced on remand with doubled single sentences after appellate court ruled that two crimes charged constituted a single offense), *cert. denied,* 110 S. Ct. 233 (1989); *United States v. Gray,* 852 F.2d 136 (4th Cir. 1988) (25–year aggregate term, including 3– and 5–year concurrent

sentences and 20–year consecutive sentence, replaced with consecutive 3– and 5–year sentences following retrial and acquittal of count supporting original 20–year consecutive sentence); *United States v. Bentley,* 850 F.2d 327 (7th Cir.) (concurrent 12–year sentences exceeded 5–year maximum for each count, replaced on remand with consecutive sentences aggregating 12 years), *cert. denied,* 102 L. Ed. 2d 537 (1988), *reh'g denied,* 102 L. Ed. 2d 1008 (1989); *United States v. Diaz,* 834 F.2d 287 (2d Cir. 1987) (concurrent sentences replaced with consecutive sentences after conviction supporting only consecutive sentence was reversed on appeal; aggregate period of incarceration remained the same), *cert. denied,* 102 L. Ed. 2d 35 (1988); *United States v. Cataldo,* 832 F.2d 869 (5th Cir. 1987) (consecutive sentences on two counts replaced by doubled sentence on single count; presumption of vindictiveness either does not arise or is sufficiently rebutted by trial court's original sentencing intent), *cert. denied,* 99 L. Ed. 2d 892 (1988); *United States v. Hagler,* 709 F.2d 578 (9th Cir.) (sentence increased on remand to match identical aggregate term originally imposed following reversal of five counts), *cert. denied,* 464 U.S. 917 (1983). *See also United States v. Shue,* 825 F.2d 1111, 1115 (7th Cir. 1987), *cert. denied,* 98 L. Ed. 2d 376 (1987); *United States v. Bay,* 820 F.2d 1511, 1513 (9th Cir. 1987) (same result even when multiple counts do not stem "from a common scheme or single course of continuing conduct"); *but cf. Pimienta–Redondo,* 874 F.2d at 17 (Breyer, J., concurring) ("[S]ince the basic conduct underlying both counts is the same, and since that basic conduct determined the sentence, it is virtually inconceivable that the similarity of old and new sentences could reflect 'vindictiveness.'").

These decisions conform to the Supreme Court's most recent treatment of the *Pearce* presumption. *See Alabama v. Smith,* __ U.S. __, 104 L. Ed. 2d 865, 109 S. Ct. 2201 (1989). There, the Court held that a presumption of vindictiveness does not arise unless there is a reasonable likelihood that the increase in sentence is the product of actual

vindictiveness. "Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness". 104 L. Ed. 2d at 873. The presumption did not arise, although the sentencing judge imposed a stiffer sentence after erroneously denying the defendant's motion to withdraw a guilty plea, because the increase in sentence was not "more likely than not attributable to . . . vindictiveness on the part of the sentencing judge." 104 L. Ed. 2d at 874.

█ Larson's murder sentence does not trigger the *Pearce* presumption for at least two reasons. First, his revised aggregate sentence is less severe than his original aggregate sentence. Second, the "increase" in the murder sentence is fully explained by the trial court's original sentencing intent. Thus, there is no hint of retaliation, and certainly no reasonable probability of actual vindictiveness. *See Alabama v. Smith, supra.*

## Double Jeopardy

In support of his double jeopardy argument, Larson claims he had a legitimate expectation of finality in his sentence. However, the case upon which he relies establishes the contrary. *See United States v. Fogel,* 829 F.2d 77 (D.C. Cir. 1987) (Bork, J.). As in *Pearce*—which holds that double jeopardy does not bar increase of a sentence following a new trial obtained "at the defendant's behest," 395 U.S. at 721—Larson "defeated [any] expectation of finality by appealing his conviction." *Fogel,* at 87. Moreover, because the original sentence was illegal, and the illegality "affected the entire sentence, including its severity;" Larson had no expectation in the finality of it. *Fogel,* at 89 n.11 (distinguishing *United States v. Crawford,* 769 F.2d 253 (5th Cir. 1985), *cert. denied,* 474 U.S. 1103 (1986)).

█ "A criminal defendant is charged with knowledge of the statutes applicable to his sentencing, and can have no legitimate expectation, protected by the double jeopardy clause, . . . that he can benefit from the terms of a sentence which is contrary to statute." *State v. Hall,* 35 Wn.

App. 302, 308, 666 P.2d 930 (1983). Specifically, by appealing a portion of a sentence, the defendant in effect challenges the entire sentencing plan, and, thus, has no legitimate expectation in the finality of any discrete part of the original sentence, whether or not that discrete part is legal in isolation, and whether or not the defendant has begun serving it. *Pimienta–Redondo,* 874 F.2d at 16; *United States v. Colunga,* 812 F.2d 196, 198 (5th Cir. 1987); *Shue,* 825 F.2d at 1113, 1115; *United States v. Busic,* 639 F.2d 940, 947 (3d Cir. 1981), *cert. denied,* 452 U.S. 918 (1981). *Accord, United States v. Cochran, supra; United States v. Anderson,* 872 F.2d 1508, 1520 (11th Cir. 1989); *Bentley,* 850 F.2d at 329–30; *Gauntlett v. Kelley,* 849 F.2d 213, 218–19 (6th Cir. 1988); *United States v. Diaz, supra; Cataldo,* 832 F.2d at 874; *United States v. Andersson,* 813 F.2d 1450, 1461–62 (9th Cir. 1987); *United States v. Hawthorne,* 806 F.2d 493, 500–01 (3d Cir. 1986); *Hagler,* 709 F.2d at 579. When the defendant appeals, the guaranty against double jeopardy requires only that time served on a previous sentence be fully credited toward any new sentence for the same offense. *Pearce,* 395 U.S. at 718–20. "This conclusion 'rests ultimately upon the premise that the original conviction has, *at the defendant's behest,* been wholly nullified and the slate wiped clean.'" (Italics ours.) *Fogel,* 829 F.2d at 85 (quoting *Pearce,* 395 U.S. at 721).

Two recent holdings of the United States Supreme Court resolve any doubt that a legal sentence on a multiple count charge may be increased to effectuate the trial court's original sentencing scheme when that scheme is upset by successful legal action of the defendant. In the first case, the Court reversed the Supreme Court of Pennsylvania and held that a defendant could be resentenced after 34 of 112 counts, including the only count for which a sentence of imprisonment had been imposed, were reversed because the statute of limitations had run. *Pennsylvania v. Goldhammer,* 474 U.S. 28, 88 L. Ed. 2d 183, 106 S. Ct. 353 (1985). The Supreme Court of Pennsylvania ruled on remand: "We hold therefore, that where a defendant appeals a judgment

of sentence, he accepts the risk that the Commonwealth may seek a remand for resentencing thereon if the disposition in the appellate court upsets the original sentencing scheme of the trial court." *Commonwealth v. Goldhammer,* 512 Pa. 587, 593, 517 A.2d 1280, 1283 (1986), *cert. denied,* 480 U.S. 950 (1987).

In the second case, the Court held that a valid sentence could be enhanced even though the defendant had completely served it as a result of an intervening change in local law and a Governor's pardon. *See Jones v. Thomas,* __ U.S. __, 105 L. Ed. 2d 322, 109 S. Ct. 2522, *reh'g denied,* 106 L. Ed. 2d 627 (1989). The defendant originally received a life sentence for felony murder, to be served *after* a 15-year sentence for the underlying felony. The Missouri Supreme Court later ruled in an unrelated case on statutory grounds that a defendant could not be convicted of *both* felony murder and the underlying felony; in such cases, only one of the two convictions was valid. At the same time, the Missouri Governor commuted, to time served, the 15-year sentence which the defendant was serving. The defendant moved for postconviction relief, arguing that he had already served a valid sentence for his crime, as a result of the state Supreme Court's decision and the Governor's pardon, and that any increase of that sentence, from time served to life, would constitute multiple punishment in violation of the double jeopardy clause. A federal appeals court agreed.

The Supreme Court reversed, reinstating the trial court's decision to substitute the life sentence for the commuted sentence and to credit the defendant with time served. The Court emphasized that the trial court had sentenced the defendant under a misapprehension of law: "The issue presented here . . . involves separate sentences imposed *for what the sentencing court thought to be separately punishable offenses,* one far more serious than the other." (Italics ours.) 105 L. Ed. 2d at 333. Moreover, the Court determined, the resentencing was not "the imposition of an additional sentence" but rather "a valid remedy" for an

improper sentence. 105 L. Ed. 2d at 334. Responding to a dissent by Justice Scalia, the Court held that the defendant's expectation in the finality of his sentence had not been upset:

> Respondent plainly had no expectation of serving only an attempted robbery sentence when he was convicted by the Missouri trial court. . . . [H]is expectation at that point was to serve both consecutive sentences. Once it was established that Missouri law would not allow imposition of both sentences, respondent had an expectation in serving "*either* 15 years (on the one sentence) *or* life (on the other sentence)." Post, at [105 L. Ed. 2d 340, 109 S. Ct. 2533 (Scalia, J., dissenting)].

*Jones,* 105 L. Ed. 2d at 334. In essence, the slate had been "wiped clean" and the trial court was free to impose any valid sentence under local law, limited only by the statutory maximum. *Pearce,* 395 U.S. at 720–21; *see Jones,* 105 L. Ed. 2d at 331. The *Jones* Court refused to exalt form over substance in applying the double jeopardy clause to resentencing. 105 L. Ed. 2d at 332 n.2.

> Under respondent's theory . . . everything depends on the order in which the consecutive sentences were originally imposed. Had respondent been sentenced to the life sentence first, he would be serving the very same term, but could advance no double jeopardy claim. There is no indication that the order of the sentences was of the slightest importance to the sentencing judge, and there is no reason constitutional adjudication should turn on such fortuities. . . . We have previously observed that "[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." Bozza v United States, 330 US 160, 166–167, 91 L Ed 818, 67 S Ct 645 (1947). We will not depart from that principle today . . ..

*Jones,* 105 L. Ed. 2d at 334–35.

We, too, see no reason why form should prevail over substance under the due process or double jeopardy clauses or under the Sentencing Reform Act of 1981. The consecutive character of Larson's original sentences cannot be ignored, any more that one can ignore the concurrent character of the new sentences, which brings them in conformance with the SRA. Our Supreme Court has specifically held that the character of a sentence is an indivisible part of it. *See Brooks v. Rhay,* 92 Wn.2d 876, 877, 602 P.2d 356 (1979)

(court's sentencing intention would be frustrated if board of prison terms and paroles changed character from concurrent to consecutive without adjusting length of the sentences). Common sense teaches that the length of a consecutive sentence is determined as much by the consecutive character as by the number of months or years ordered to be served, since the character of the sentence determines when it will begin to run. A defendant sentenced to three *consecutive* terms does not begin serving the third sentence until he completely serves the first two.

The trial court sentenced Larson "while under a misapprehension that consecutive sentences did not require imposition of an exceptional sentence." Finding of fact 3. Larson assigns error to this finding, but the record supports it. Defense counsel noted on remand that the trial court originally intended a standard range sentence. If the court had originally imposed the standard range sentence it imposed on remand, Larson could not have appealed the sentence. RCW 9.94A.210(1). The only explanation for counsel's silence at the original hearing when the court announced consecutive sentences was either a misperceived futility or a hope to win an unjustified windfall on appeal. "But neither the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls." *Jones,* 105 L. Ed. 2d at 335. At the least, counsel should have filed a motion and memorandum apprising the trial court of its error. Just as the defendant in *Jones* "plainly had no expectation of serving only an attempted robbery sentence", *Jones,* 105 L. Ed. 2d at 334, Larson had "no expectation" of serving only a 281–month concurrent sentence. The sentence on remand was not "the imposition of an additional sentence" as Larson contends but "a valid remedy" for an improper sentence. *Jones v. Thomas, supra.*

By appealing the consecutive character of the original sentences, Larson in effect challenged the entire sentencing plan. He thus had no legitimate expectation in the finality of any particular sentence. The guaranty against double jeopardy requires only that time served on the previous

murder sentence be fully credited toward the revised murder sentence. This was done.

The amended judgment and sentence is affirmed.

COLEMAN, C.J., and WINSOR, J., concur.

Review denied at 114 Wn.2d 1015 (1990).