FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 MAR 12 AM 7:49



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHNGTON, | ) | No. 75458-1-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| RONALD RICHARD BROWN, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: <u>March 12, 2018</u> |
|  | ) |  |

Cox, J. — Ronald Brown appeals the exceptional sentence imposed upon remand following his successful appeal of his first judgment and sentence. He contends that the sentence is presumptively vindictive. For the first time in this second appeal, he also contends that the State failed in its burden to prove the facts necessary to establish his offender score. Finally, he challenges certain conditions of community custody that the trial court imposed.

We conclude that Brown fails in his burden to show that the new sentence imposed is presumptively vindictive. And he does not argue that it is actually vindictive. He failed to preserve below on remand his challenge to whether the State proved his offender score and he does not establish that the claim falls within the narrow exception of RAP 2.5(a). But he correctly argues that certain

conditions of community custody are improper. We affirm in part, reverse in part, and remand with directions.

In 2011, Brown, along with several accomplices, entered the home of two victims, restrained them, threatened them with guns, and robbed them.[1] A jury convicted Brown of two counts of first degree kidnapping, two counts of first degree robbery, one count of first degree burglary, and two counts of second degree assault. The jury also found that he was armed with a firearm while committing these crimes, requiring imposition of mandatory firearm enhancements by the court.

The trial court calculated the relevant offender scores and standard ranges at sentencing. Brown's offender score was 17. While the trial court concluded that an exceptional sentence was legally justified, the court chose not to impose one. It did so on the basis that the appropriate length of the aggregate sentence was 638 months.

Brown appealed, and this court reversed the kidnapping counts based on an instructional error.[2] This court also vacated the assault counts, concluding that they merged with the robberies.[3] It remanded the case for retrial on the reversed counts as well as for resentencing on the remaining convictions.[4]

---

[1] State v. Brown, No. 70148-7-I, slip op. at *1 (Wash. Ct. App. Jul. 27, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/701487.pdf.

[2] Id. at *4.

[3] Id. at *8.

[4] Id. at *14.

At the resentencing hearing, the State sought dismissal without prejudice of the two kidnapping counts. The original sentencing judge granted this motion.

The State recommended that the trial court impose the same 638 month term as originally imposed, this time as an exceptional upward sentence. Brown sought a sentence at the low end of the standard range.

The judge rejected both recommendations and sentenced Brown for the remaining three convictions: two of first degree robbery and one of first degree burglary, each with the mandatory firearm enhancements. The aggregate sentence is for a term of 399 months. The court also imposed certain community custody conditions as part of the resentencing.

Brown appeals.

## JUDICIAL VINDICTIVENESS

### Presumptive Vindictiveness

Brown argues that the trial court abused its discretion by imposing presumptively vindictive sentences upon remand. We disagree.

Constitutional due process under the Fourteenth Amendment requires that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives" upon remand.[5] The United States Supreme Court established, in North Carolina v. Pearce, a

---

[5] North Carolina v. Pearce, 395 U.S. 711, 725, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).

presumption of vindictiveness that may arise in certain circumstances.[6] Actual

vindictiveness may be grounds for reversal if proven by the defendant.[7]

The threshold question in each case is whether the sentence on remand is

"more severe."[8] In State v. Larson, this court adopted the view of federal courts

on this question.[9] Those courts "uniformly hold that the Pearce presumption

never arises when the *aggregate* period of incarceration remains the same or is

reduced on remand."[10] Notably, the Ninth Circuit Court of Appeals has held to

this approach, explaining that the purpose of the Pearce presumption is

protected "[i]f there is a possibility of a sentence reduction and no risk of a

sentence increase."[11]

Here, Brown fails in his burden to show that the Pearce presumption

arises. The trial court initially imposed an aggregate sentence of 638 months.

---

[6] Id.

[7] State v. Larson, 56 Wn. App. 323, 328, 783 P.2d 1093 (1989).

[8] State v. Ameline, 118 Wn. App. 128, 133, 75 P.3d 589 (2003); Larson, 56 Wn. App. at 326.

[9] 56 Wn. App. 323, 328, 783 P.2d 1093 (1989).

[10] Larson, 56 Wn. App. at 326; see United States v. Nerius, 824 F.3d 29 (3d Cir. 2016); United States v. Fowler, 749 F.3d 1010 (11th Cir. 2014); United States v. Bentley, 850 F.2d 327 (7th Cir. 1988), cert. denied, 488 U.S. 970, 109 S. Ct. 501, 102 L. Ed. 2d 537, rehearing denied, 488 U.S. 1051, 109 S. Ct. 885, 102 L. Ed. 2d 1008 (1989); United States v. Diaz, 834 F.2d 287 (2nd Cir. 1987), cert. denied, 488 U.S. 818, 109 S. Ct. 57, 102 L. Ed. 2d 35 (1988); United States v. Cataldo, 832 F.2d 869 (5th Cir. 1987), cert. denied, 485 U.S. 1022, 108 S. Ct. 1577, 99 L. Ed. 2d 892 (1988); United States v. Shue, 825 F.2d 1111, 1115 (7th Cir. 1987), cert. denied, 484 U.S. 956, 108 S. Ct. 351, 98 L. Ed. 2d 376 (1987).

[11] United States v. Horob, 735 F.3d 866, 871 (9th Cir. 2013).

Upon resentencing, it imposed an aggregate sentence of 399 months. Under State v. Larson and related federal authorities, the shorter aggregate length of the second sentence precludes application of the presumption.

Notably, a fair reading of the sentencing court's reasoning fails to show otherwise. It appears that the court imposed an exceptional sentence on remand under the "free crime" rule because Brown's offender score was still eleven, above the score of nine, implicating this rule. And the length of the sentence imposed included consideration of the sentence imposed on a Brown accomplice after Brown's original sentencing. In short, nothing in the record before us suggests either presumptive or actual vindictiveness.

Notwithstanding that his current aggregate sentence is substantially lower than his original aggregate sentence, Brown relies on State v. Ameline[12] to support his argument. That reliance is misplaced.

In that case, William Ameline was tried and sentenced three times for second degree murder.[13] After the first trial, the trial court imposed a 164-month standard range sentence.[14] Ameline appealed, securing a reversal and remand. He was convicted again and sentenced to the same term.[15] He appealed, secured another reversal and remand, and faced trial again.[16] He was convicted

---

[12] 118 Wn. App. 128, 75 P.3d 589 (2003).

[13] Id. at 130.

[14] Id.

[15] Id. at 131.

[16] Id.

5

a third time, but this time the trial court imposed an exceptional sentence of 240 months.[17]

Division Two of this court applied the Pearce presumption and set aside the third sentence because it exceeded, in the aggregate, the original sentence.[18] Thus, Ameline does not alter the principles we just discussed.

Brown further contends that two opinions from other jurisdictions, State of Oregon v. Bradley[19] and In re Matter of Craig,[20] support his position. Because there is precedent in this state that supports the result we follow, we have no reason to look to other jurisdictions to decide this question. In any event, his reliance on those cases is misplaced.

Bradley does not support Brown's position. In that case, the Oregon Court of Appeals considered a sentence imposed upon Ronald Bradley following reversal of several convictions for sexual abuse of a child.[21] On remand, the trial court imposed a sentence that still took into account the reversed convictions

---

[17] Id.

[18] Id. at 133.

[19] 281 Or. App. 696, 383 P.3d 937 (2016), review denied, 361 Or. 645 (2017).

[20] 571 N.E.2d 1326 (Ind. Ct. App. 1991).

[21] 281 Or. App. at 698.

based upon the "strong possibility" that the State might not retry them.[22] But the aggregate sentence was shorter than that originally imposed.[23]

Following the Pearce presumption discussed above, the court of appeals concluded that no presumption of vindictiveness had arisen.[24]

The court then turned to the related question: whether actual vindictiveness was supported by the record.[25] The court concluded that the sentence "should not have been increased such that the prosecution would be relieved of its burden to prove the reversed counts beyond a reasonable doubt. That is the essence of punishing defendant for his success on appeal."[26] The trial court's reliance on the reversed convictions presented an unconstitutionally vindictive and "impermissible consideration in increasing the sentence imposed" upon the remaining counts.[27]

Bradley does not stand for the proposition that the presumption of vindictiveness arises under the circumstances of this case. Rather, it holds that actual vindictiveness may be found where the resentencing court increases the sentence on remaining counts *on the basis* of reversed counts. There is nothing in this record to show that was done here.

---

[22] Id. at 699 (internal quotation marks omitted).

[23] Id. at 700.

[24] Id. at 701.

[25] Id.

[26] Id. at 703.

[27] Id. at 704.

Brown further relies upon the Indiana Court of Appeals decision in <u>Craig</u>. That court also recognized that the presumption of vindictiveness does not arise "where an aggregate sentence is reduced, but some of the interdependent sentences in a 'sentencing package' are increased following a successful appeal of some of the individual counts."[28]

In the case below, the trial court had found Pierre Craig guilty of three counts of criminal contempt for refusal to testify.[29] Those counts were reversed on the basis that they constituted only a single act of contempt.[30] But the resentencing court imposed the identical sentence originally imposed for the three counts.[31]

The court of appeals reversed this sentence, holding "that after reversal of a sentence erroneously entered for multiple acts of criminal contempt, it is a denial of due process to impose a sentence any greater than the original sentence for each single act of contempt."[32] It explained that the presumption of vindictiveness arose because the resentencing court imposed a sentence in excess of that attendant to a single count of contempt and more proper to the three-count conviction already reversed.[33]

---

[28] 571 N.E.2d at 1327-28.

[29] <u>Id.</u> at 1327.

[30] <u>Id.</u>

[31] <u>Id.</u>

[32] <u>Id.</u> at 1328.

[33] <u>Id.</u>

The Indiana Court of Appeals subsequently clarified in Sanjari v. State that it "join[s] with that vast majority of courts who have addressed the question and have concluded that it is the aggregate sentence that is the key in such cases."[34] The defendant in that case initially had been convicted of two class C felonies, each carrying a five-year sentence, to be served consecutively.[35] On appeal, one of the convictions was reduced to a Class D felony.[36] The resentencing court then imposed an eight-year sentence on the remaining Class C felony, and two years on the reduced class D felony, resulting in a sentence equivalent to that originally imposed.[37] Because the resentencing court could permissibly view the individual sentences as part of an overall plan, and flexibly impose an accordant sentence, its action was not presumptively vindictive.[38]

In his reply brief, Brown argues that Washington should adopt the "modified aggregate" approach to the Pearce presumption propounded by the Eleventh and Second Circuit Courts of Appeals. Because this argument was first raised in the reply brief, we choose not to address it.[39]

---

[34] 981 N.E.2d 578, 582 (Ind. Ct. App. 2013).

[35] Id. at 580.

[36] Id.

[37] Id.

[38] Id. at 582.

[39] Deutsche Bank Nat. Trust. Co. v. Slotke, 192 Wn. App. 166, 177, 367 P.3d 600, review denied, 185 Wn.2d 1037 (2016).

*Actual Vindictiveness*

Brown does not argue that this record supports the related question of actual vindictiveness by the trial court in imposing the sentences now before us. In any event, we see nothing in this record to support such a claim.

*Collateral Estoppel*

Brown next argues that the trial court was barred by collateral estoppel from imposing an exceptional sentence after expressly declining to do so at the time of the initial sentencing. We hold that collateral estoppel is not a bar to this resentencing.

Collateral estoppel arises from the constitutional guaranties against double jeopardy.[40] Under this doctrine, "'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"[41] The supreme court has applied collateral estoppel in the criminal context.[42] Courts do not apply it hypertechnically "but with realism and rationality."[43]

---

[40] State v. Tili, 148 Wn.2d 350, 360, 60 P.3d 1192 (2003).

[41] Id. (quoting Ashe v. Swenson, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)).

[42] Id.

[43] Id. at 361.

10

The Ameline court held that collateral estoppel only operates after a judgment becomes final, and a judgment reversed on appeal and remanded for resentencing is not final for these purposes.[44]

Here, as in Ameline, the original sentence never became final because Brown timely appealed that sentence. The sentence was reversed and the case remanded for resentencing. Thus, a necessary element of collateral estoppel is absent: there is no final judgment. On this basis alone, we reject the collateral estoppel argument.

But this argument fails for other reasons as well. Analysis of collateral estoppel also requires the court to identify the issue subject to the previous valid and final judgment.[45] Then the court must determine if that issue is identical to the issue litigated in a subsequent proceeding.[46] Even if the original sentence constituted a final judgment, which it does not, Brown's argument still fails.

Two distinct issues come into play when a trial court considers whether to impose an exceptional sentence.[47] First, the fact finder must determine beyond a reasonable doubt the presence of relevant circumstances to justify an exceptional sentence.[48] Second, the trial court must make a discretionary determination, whether an exceptional sentence is appropriate in light of those

---

[44] Ameline, 118 Wn. App. at 134.

[45] Id.

[46] Id.

[47] State v. Rowland, 160 Wn. App. 316, 330, 249 P.3d 635 (2011).

[48] Id.

circumstances.[49] When a sentence is reversed and remanded for resentencing, the second step may occur under new circumstances.[50]

State v. Tili[51] is instructive. In that case, Fonotaga Tili sexually assaulted L.M., penetrating her numerous times.[52] Along with other charges, the State charged separate counts for each penetration, and Tili was convicted of all counts.[53]

The original sentencing court declined to impose an exceptional upward sentence, opining that the appellate court would likely reverse such a sentence "if the rapes were considered separate and distinct conduct."[54] But the court also explained that if they were reversed on that basis, it would impose the same sentence of 417 months as an exceptional upward sentence, based on deliberate cruelty and vulnerability of the victim.[55]

As predicted, the supreme court reversed the separate rape convictions, concluding that they constituted the same criminal conduct for sentencing

---

[49] Id.

[50] Tili, 148 Wn.2d at 365.

[51] 148 Wn.2d 350, 60 P.3d 1192 (2003).

[52] Id. at 355-56.

[53] Id. at 356.

[54] Id. at 357.

[55] Id.

purposes.[56] And, as the trial court stated, it imposed the same sentence on remand as an exceptional upward sentence.[57]

Tili appealed and made the same argument Brown makes here.[58] He contended the trial court was "collaterally estopped from imposing the exceptional sentence at the resentencing because he believe[d] that issue was already considered and rejected with finality at the first sentencing."[59]

The supreme court rejected this argument.[60] It explained that "the issue at the resentencing was fundamentally different" from that present at the original sentencing.[61] Specifically, the sentencing court faced different standard ranges before and following remand.[62] Thus, the context controlling whether an exceptional upward sentence was appropriate had changed.[63] And with that context changed, the trial court could "'choose again to consider whether the presumptive sentence is clearly too lenient' after recalculating the offender score."[64]

---

[56] Id.

[57] Id.

[58] Id. at 360.

[59] Id. at 361.

[60] Id. at 363.

[61] Id.

[62] Id.

[63] Id.

[64] Id. at 365 (quoting State v. Collicott, 118 Wn.2d 649, 660, 827 P.2d 263 (1992)).

13

Here, the original sentencing court found that circumstances existed that could legally justify an exceptional upwards sentence. But it had to determine whether such an upward departure was appropriate when the top end of the standard range was 638 months. Under those circumstances, the court chose not to impose an exceptional sentence because the length of the sentence was appropriate under the circumstances.

Upon remand, the sentencing judge had to determine whether a top end standard sentence was appropriate. It concluded it was not because of the free crime rule. It, accordingly, exercised its discretion to impose an exceptional upward sentence. The issues were not the same.

The trial court discussed at length this change in circumstances. At the original sentencing, the trial court held that it had the power to impose an exceptional sentence based on Brown's offender score but concluded that that imposition was unnecessary in light of the applicable standard range. On resentencing, it concluded that an exceptional upward sentence was appropriate in light of the "free crime rule" and the new relevant standard range.

Based on this reasoning, the trial court extrapolated out what the standard range would dictate based on Brown's higher offender score. The court found that score to be 11, a fact undisputed on appeal. It imposed an exceptional upward sentence based upon that extrapolation.

The trial court also explained that it would not follow the State's recommendation to impose the original term of 638 months because of the sentence imposed on an accomplice since Brown's initial sentencing. The court

explained that "in relation to what [Brown's] original sentence was compared to what [the accomplice] got, if I follow the original sentence I think it's too far out of the lines of being reasonable."[65]

Brown primarily relies on the supreme court's four justice plurality in the lead opinion in State v. Collicott.[66] But the majority opinion in that case, signed by five justices, teaches that this reliance is misplaced.

Eric Collicott had been convicted for burglary, rape, and kidnapping.[67] At initial sentencing, the trial court had declined to impose an exceptional upward sentence.[68] In doing so, it apparently rejected the State's argument that the crime had been deliberately cruel.[69] The trial court concluded that Collicott's crimes constituted the same criminal conduct and sentenced Collicott within the standard range.[70] Collicott appealed.

The supreme court agreed that the crimes constituted the same criminal conduct, but concluded that the sentencing court had erred in calculating the offender score.[71] It remanded for the narrow task of recalculating that score.[72]

---

[65] Report of Proceedings (June 21, 2016) at 34.

[66] 118 Wn.2d 649, 827 P.2d 263 (1992).

[67] Id. at 650 (plurality opinion).

[68] Id. at 661 (plurality opinion).

[69] Id. (plurality opinion).

[70] Id. at 651 (plurality opinion).

[71] Id. at 652-53 (plurality opinion).

[72] Id. (plurality opinion).

Upon resentencing, the trial court imposed an exceptional upward sentence based upon Collicott's deliberate cruelty and the "clearly too lenient" nature of the standard range.[73]

On the second appeal, a plurality of justices concluded in the lead opinion that, given the narrow scope of remand, "the trial court could not at resentencing impose an exceptional sentence based on aggravating factors which were considered in the prior sentencing and rejected as a basis for an exceptional sentence."[74] But a majority of the court in an opinion authored by a concurring justice held that they would not have reached the issue of collateral estoppel, or this conclusion.[75]

In Tili, the supreme court subsequently held that Collicott's conclusion is "not mandatory authority regarding the use of collateral estoppel in exceptional sentencing and may be considered dicta."[76] The Tili court also distinguished the holding in Collicott's lead opinion.[77] It explained that the supreme court in Collicott had not altered the sentencing context by its earlier reversal.[78] It had not reversed convictions or findings justifying an exceptional sentence. Rather, it

---

[73] Id. at 654 (plurality opinion).

[74] Id. at 663-64 (plurality opinion).

[75] Id. at 669-70 (Durham, J., concurring).

[76] Tili, 148 Wn.2d at 364.

[77] Id.

[78] Id.

16

remanded solely for recalculation of the offender score.[79]  Thus, the resentencing court there had faced an unchanged context, and made a decision at odds with the one previously rejected.

Here, the context at resentencing was like Tili, not Collicott.  This court's earlier reversal of several of Brown's convictions changed the context for resentencing.  The trial court had to consider a different standard range and determine whether an exceptional upward sentence was appropriate in light of the reversals.  Thus, the issue at each sentencing proceeding differed and collateral estoppel did not preclude the sentence imposed on remand.

In sum, there is neither a presumption of vindictiveness nor actual vindictiveness shown by this record.  Accordingly, we reject Brown's claim of error.

## PROSECUTORIAL VINDICTIVENESS

Brown also argues that the State acted with presumptive vindictiveness. He bases this argument on the State's recommendation at resentencing of an exceptional sentence of 638 months, the same sentence imposed prior to reversal and remand.  Because Brown fails to show prejudice from this recommendation, which the trial court rejected, we conclude that he fails in his burden of proof.

The United States Supreme Court has extended the Pearce presumption to review of prosecutorial conduct directed against a defendant who has

---

[79] Id.

17

exercised his right to challenge his conviction.[80] It has concluded that such a defendant "convicted of an offense is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration."[81]

The supreme court has further explained that a prosecutorial action is vindictive "'only if *designed* to penalize a defendant for invoking legally protected rights.'"[82] A defendant can demonstrate that the prosecutor's conduct was presumptively vindictive when "'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'"[83]

A defendant alleging that a prosecutor has committed some kind of misconduct "must show a substantial likelihood that the misconduct affected" the result.[84]

Here, Brown argues that the State's sentencing recommendation on remand was presumptively vindictive. There is no argument that it is actually vindictive.

---

[80] Blackledge v. Perry, 417 U.S. 21, 27, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974).

[81] Id. at 28.

[82] State v. Korum, 157 Wn.2d 614, 627, 141 P.3d 13 (2006) (quoting United States v. Meyer, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).

[83] Id. (quoting Meyer, 810 F.2d at 1246).

[84] State v. Houston-Sconiers, 188 Wn.2d 1, 31, 391 P.3d 409 (2017).

More importantly, Brown fails to explain how the sentencing recommendation, which the court rejected, resulted in prejudice to him. In view of the rejection of the recommendation and imposition of a substantially lower sentence, we fail to see any prejudice.

At oral argument of this case, Brown speculated that prejudice exists because the sentencing judge imposed an exceptional sentence after not doing so at the first sentencing. We have already discussed why the sentencing judge properly imposed an exceptional sentence the second time. Thus, the record simply does not support Brown's speculative argument of prejudice.

## PROOF OF OFFENDER SCORE

For the first time on appeal, Brown argues that the trial court abused its discretion by including two convictions which the State allegedly failed to prove had not washed out. Because Brown cannot make this argument for the first time on his second appeal, having failed to make it in the first appeal or on remand, we decline to reach this issue.

A defendant who has appealed his conviction, had it remanded, and appealed again, generally cannot raise issues from the original proceeding for the first time on his second appeal.[85] But a defendant "may raise sentencing issues on a second appeal if, on the first appeal, the appellate court vacates the original sentence or remands for an entirely new sentencing proceeding."[86] This is compatible with the recognition that the context on resentencing has changed.

---

[85] State v. Sauve, 100 Wn.2d 84, 87, 666 P.2d 894 (1983).

[86] State v. Toney, 149 Wn. App. 787, 792, 205 P.3d 944 (2009).

RAP 2.5(a) requires Brown to have raised this issue at the resentencing to preserve the issue on appeal. He failed to do so. And he makes no argument on appeal why RAP 2.5(a) applies. Thus, we decline to reach the issue.

## COMMUNITY CUSTODY CONDITIONS

Brown argues that the trial court improperly imposed certain conditions of community custody relevant to drug treatment. He does not contest other conditions imposed.

We first consider the majority of the challenged conditions, and then separately consider the imposition of a condition precluding Brown from "drug areas."

### General Drug-Related Conditions

Brown challenges conditions requiring that he not possess drug paraphernalia, and that he participate in certain substance counseling, treatment, and offender programs, and submit to urinalysis, Breathalyzer, and polygraph tests. These conditions are listed in an appendix to the judgment and sentence as conditions 5, 7, 8, and 9. We agree with his challenges to the conditions concerning drug paraphernalia and substance counseling, treatment, and offender programs. The State concedes error on these. But we disagree with Brown's challenge to the urinalysis, Breathalyzer, and polygraph conditions.

The trial court's sentencing authority depends on statute.[87] Generally, this court reviews for abuse of discretion the imposition of sentencing requirements.[88]

---

[87] In re Pers. Restraint of Carle, 93 Wn.2d 31, 33, 604 P.2d 1293 (1980).

[88] State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

20

But we review de novo that imposition when the trial court's statutory sentencing authority is challenged.[89]

The Sentencing Reform Act authorizes the trial court to impose certain prohibitions or affirmative conditions of community custody so long as they are "crime-related."[90] A prohibition is "crime-related" when it "directly relates to the circumstances of the crime for which the offender has been convicted."[91]

Thus, a trial court may only impose certain drug-related conditions when the evidence shows that drugs contributed to the crime, rendering such conditions crime-related. Specifically, Division Two of this court has reversed conditions requiring substance counseling and treatment when the evidence did not show substance use contributed to the crime.[92] Division Three of this court has held that conditions barring the defendant from possessing drug paraphernalia, otherwise not a crime, are improper when the crime was not drug-related.[93]

But a sentencing court may require that an offender submit to tests to monitor compliance with other valid conditions of community custody.[94]

---

[89] Id.

[90] RCW 9.94A.505(9).

[91] RCW 9.94A.030(10).

[92] State v. Jones, 118 Wn. App. 199, 207-08, 76 P.3d 258 (2003).

[93] State v. Munoz-Rivera, 190 Wn. App. 870, 892, 361 P.3d 182 (2015).

[94] State v. Riles, 135 Wn.2d 326, 342-43, 957 P.2d 655 (1998).

Specifically, the supreme court has recognized the investigative utility of polygraph tests in monitoring general compliance with sentencing conditions.[95]

Here, conditions 5, 7, 8, and 9 require that Brown not possess drug paraphernalia, participate in certain substance counseling, treatment, and offender programs, and participate in urinalysis, Breathalyzer, and polygraph tests.

The trial court at his original sentencing expressly found that Brown's crimes were not drug-related and declined to impose the drug-related conditions. It made no contrary finding on resentencing. Thus, it abused its discretion in imposing conditions that required Brown not to possess drug paraphernalia and to participate in counseling, treatment, and offender programs. These conditions must be stricken.

The sentencing court also imposed a monitoring condition, requiring that Brown submit to urinalysis, Breathalyzer, and polygraph tests. Additionally, the trial court imposed conditions that Brown neither possess nor consume drugs or alcohol. Brown does not challenge these latter conditions. Thus, the trial court did not abuse its discretion in imposing urinalysis and Breathalyzer conditions to monitor compliance with these conditions. Nor did it abuse its discretion in imposing the polygraph condition, necessary to monitor compliance with a wider host of unchallenged conditions.

Brown additionally argues that collateral estoppel barred the trial court from reconsidering its decision that the crimes were not drug-related. We agree.

---

[95] Id.

As we discussed, the issue of the standard sentencing range changed from initial sentencing to resentencing. But the issue of whether the crimes were sufficiently drug-related to justify imposition of these same conditions was identical at both proceedings. The State recommended the conditions at both. Thus, the issue is unchanged, and collateral estoppel barred the trial court's reconsideration.

Brown argues that the trial court could not impose community custody conditions as these exceeded the mandate on remand. Not so.

This court remanded Brown's case "with instructions that the trial court enter orders vacating these convictions and for resentencing."[96] The mandate stated that the case was remanded "for further proceedings in accordance with the attached true copy of the opinion." Imposition of community custody sentencing is a necessary part of sentencing, and thus was within the resentencing court's authority.

### Drug Areas

Brown argues that condition number 6 requiring that he avoid "drug areas" as determined by his Community Corrections Officer (CCO) is unconstitutionally vague and overbroad. We agree.

Due process precludes the enforcement of vague laws, including sentencing conditions.[97] To avoid a vagueness challenge, the law "must (1) provide ordinary people fair warning of proscribed conduct, and (2) have

---

[96] Brown, No. 70148-7-I, slip op. at *14.

[97] State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015).

23

standards that are definite enough to 'protect against arbitrary enforcement.'"[98] Failure to satisfy either prong renders the condition unconstitutional.[99] But a condition imposed upon community custody is not vague "'merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'"[100] This court does not presume sentencing conditions to be constitutionally sound.[101]

This court recently held, in State v. Irwin, that a community custody condition requiring further definition from a CCO was unconstitutionally vague.[102] That case concerned a community custody condition barring Samuel Irwin from places where "children are known to congregate," as defined by his CCO.[103] This court concluded that "[w]ithout some clarifying language or an illustrative list of prohibited locations . . . the condition does not give ordinary people sufficient notice to understand what conduct is proscribed."[104] The authority given to the

---

[98] Id. at 652-53 (quoting State v. Bahl, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008)).

[99] Id. at 653.

[100] Id. (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010)).

[101] Id. at 652.

[102] 191 Wn. App. 644, 652, 364 P.3d 830 (2015).

[103] Id. at 649.

[104] Id. at 655 (internal quotation marks omitted).

CCO to interpret the condition also allowed for unconstitutionally arbitrary enforcement.[105]

Here, the State concedes that this condition is unconstitutionally vague. The State's concession is proper. Leaving the definition of "drug areas" open to the CCO's discretion deprives Brown of fair warning and allows for arbitrary enforcement under Irwin. Further, the trial court held that a recommended condition that Brown "not associate with known drug users" was impermissibly vague. It is difficult to see how that condition is distinct from that challenged with regards to vagueness.

Brown also argues that this condition unconstitutionally infringes upon his fundamental right of travel. We need not reach this argument because the vagueness issue is dispositive.

Brown argues that the condition should be stricken. He contends that even if its vagueness were cured, it would not be crime-related. He cites precedent that this is the "'simple remedy.'"[106] The State contends that both striking and clarification are appropriate remedies.

We conclude that striking the condition is the proper remedy.

---

[105] Id.

[106] Riles, 135 Wn.2d at 350.

We affirm the sentence, except for the community custody conditions that we have discussed. We reverse those conditions and remand to the trial court with directions to address them in a manner not inconsistent with this opinion.

Cox, J.

WE CONCUR:

Mann, J.

Appelwick, J.