

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE __MAY 0 2 2019__

Fairhurst, C.J.
CHIEF JUSTICE

This opinion was
filed for record
at 9am on 5-2-2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 95734-7 |
| Respondent, | ) | |
| v. | ) | En Banc |
| RONALD RICHARD BROWN, | ) | |
| Petitioner. | ) | Filed __MAY 0 2 2019__ |

MADSEN, J.—Ronald Brown appeals an unpublished Court of Appeals decision affirming his exceptional sentence for two counts of first degree robbery and one count of first degree burglary. At his first sentencing hearing, the trial court decided not to impose an exceptional sentence on his original convictions. On appeal, four of his seven original convictions were vacated. Upon resentencing, the trial court exercised its discretion and imposed an exceptional sentence above the sentencing range for his remaining convictions. Brown argues that the decision to impose an exceptional sentence on remand was collaterally estopped, that the exceptional sentence is the result of judicial vindictiveness, and that the State's recommendation for an exceptional sentence is the

result of prosecutorial vindictiveness. We affirm the Court of Appeals decision and affirm Brown's sentence.

## FACTS

In 2012, Brown was charged with two counts of first degree kidnapping, two counts of first degree robbery, one count of first degree burglary, and two counts of second degree assault, all with a firearm. Brown proceeded to jury trial. At the close of trial, the jury convicted Brown of all seven counts.

At the sentencing hearing, the State recommended the high end of the sentencing range for Brown's convictions. The State noted that an exceptional sentence upward would be warranted based on Brown's high offender score but did not recommend an exceptional sentence at the original sentencing. The trial court also declined to impose an exceptional sentence, citing the victims' statements that their lives would have been in danger if not for Brown being present. The trial court ultimately sentenced Brown to the high end of the sentencing range, 638 months in prison.

On appeal, the Court of Appeals reversed Brown's two kidnapping convictions on instructional error and his two assault convictions on double jeopardy grounds. The court then remanded for resentencing.

On remand, the State elected to dismiss the two kidnapping charges without prejudice because of the time and effort involved in relocating the victims and codefendants, and the resources spent by the prosecution in retrying Brown. At the resentencing hearing, the State initially recommended a sentence of 351 months— reflecting the high end of the standard sentencing range. However, the State later

amended its recommendation to reimpose the original sentence as an exceptional sentence. The court declined to reimpose the original sentence but did impose an exceptional sentence of 399 months. At the resentencing hearing, the judge noted that he did not impose the exceptional sentence at the original sentencing because he felt the 638 months was "legally appropriate and within the law." Verbatim Report of Proceedings, Resentencing & Mot. Hr'g (VRP Mot.) (June 21, 2016) at 34. The judge also noted that imposing the high end of the sentencing range with the remaining charges would give Brown a "free crime[]," justifying the imposition of an exceptional sentence. *Id.* However, the judge stopped short of imposing the original sentencing range.[1] *Id.*

## ANALYSIS

### Collateral Estoppel

Brown first argues the trial court is collaterally estopped from imposing an exceptional sentence at the resentencing hearing when it chose not to impose one at the original sentencing hearing.

For collateral estoppel to apply, (1) the issue in the prior adjudication must be identical to the issue currently presented for review, (2) the prior adjudication must be a final judgment on the merits, (3) the party against whom the doctrine is asserted must have been a party to or in privity with a party to the prior adjudication, and (4) barring the

---

[1] The trial judge took into account that one of Brown's codefendants, Johnathan Frohs, accepted a plea deal and received his sentence during the interim. Although the trial judge never specified the length of Frohs' sentence, he did articulate that when he looked at "[Brown's] original sentence . . . compared to what Mr. Frohs got . . . I think it's too far out of the lines of being reasonable." VRP Mot. at 34. Presumably, Frohs' guilty plea sentencing resulted in a shorter sentence than Brown's original sentence.

relitigation of the issue will not work an injustice on the opposing party. *State v. Harrison*, 148 Wn.2d 550, 561, 61 P.3d 1104 (2003). Courts should not apply collateral estoppel hypertechnically but, rather, with realism and rationality. *State v. Tili*, 148 Wn.2d 350, 361, 60 P.3d 1192 (2003).

Brown argues the issue in the prior adjudication is identical to the issue currently presented for review—whether to impose an exceptional sentence based on Brown's offender score. Suppl. Br. of Pet'r 6-7. Specifically, Brown argues because the judge chose not to impose an exceptional sentence at the initial sentencing despite being justified due to his offender score, collateral estoppel applies. *Id.* at 7.

His argument is similar to the one made in *Tili*. In that case, the defendant was initially sentenced to 417 months. 148 Wn.2d at 357. The trial court did not impose an exceptional sentence because it treated his offenses as separate and distinct conduct. *Id.* However, the court indicated that if his ruling was reversed on appeal and the offenses should have been treated as the same criminal conduct, the court would impose the same sentence as an exceptional sentence. *Id.* The original sentence was reversed, to be treated as same criminal conduct, and the trial court imposed the same 417 month sentence as an exceptional sentence. *Id.*

The defendant in *Tili* argued that the trial court was collaterally estopped from imposing an exceptional sentence on resentencing because it chose not to do so at the original sentencing hearing. *Id.* at 361. This court was not persuaded. We noted that separate and distinct conduct for multiple offenses resulted in a fundamentally different sentence from same criminal conduct—the former resulting in consecutive sentences,

4

while the latter results in concurrent sentences. *Id.* at 362-63. Thus, the issue at resentencing was fundamentally different.

Despite this, Brown attempts to distinguish *Tili* because, here, the only relevant change was the dismissal of four charges resulting in a lowered offender score. Suppl. Br. of Pet'r at 7. This is a distinction without effect. Under RCW 9.94A.535(2), a trial court may impose an aggravated exceptional sentence without a finding of fact by a jury under certain circumstances, one of them being that "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). To justify an exceptional sentence upward, a trial court must first calculate or otherwise determine the defendant's offender score, and based on that factor, the trial court has discretion to impose an exceptional sentence if it deems the defendant's sentence will result in "free crimes."

Based on Brown's offender score in addition to the firearm enhancements, Brown's original sentence totaled 638 months. The trial court had a question before it at that time: Based on the defendant's high offender score, should it impose an exceptional sentence based on the current range? The court decided the sentence at the time was fair and opted not to impose an exceptional sentence. On appeal, based on the reversal of two convictions on the basis of double jeopardy and the State's decision not to retry two other convictions, Brown was left with three convictions. The question upon resentencing thus fundamentally changed: Was the newly computed sentencing range sufficient based on Brown's offender score? The trial court had a new offender score and a new sentencing range to consider when it decided to impose the exceptional sentence.

5

Finality under Collateral Estoppel

Next, Brown argues that the issue of imposing the exceptional sentence was "final" for purposes of collateral estoppel. In support of this position, he cites to *State v. Kilgore*, 167 Wn.2d 28, 216 P.3d 393 (2009), for the proposition that an unchallenged exceptional sentence on appeal is final and has preclusive effect on remand should any other portion of the judgment and sentence be reversed. Suppl. Br. of Pet'r at 9.

In *Kilgore*, the trial court imposed an exceptional sentence of 560 months on seven counts. 167 Wn.2d at 32. On appeal, two counts were reversed and the other five affirmed. *Id.* The trial court did not elect to resentence him and instead signed an order striking the two reversed counts and changing his offender score accordingly. *Id.* at 34. We held that finality occurs when "'the availability of appeal' [has] been exhausted." *Id.* at 43 (emphasis omitted) (quoting *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 327, 823 P.2d 492 (1992)). "[A] case has no remaining appealable issues where an appellate court issues a mandate reversing one or more counts and affirming the remaining count, and where the trial court exercises no discretion on remand as to the remaining final count." *Id.* at 37. We noted that "[a]lthough the trial court had discretion . . . to revisit Kilgore's exceptional sentence on the remaining five convictions, . . . it was not reconsidering the exceptional sentence imposed on each of the remaining counts." *Id.* at 41.

Brown's reliance on *Kilgore* is misplaced. It does not stand for the proposition that all exceptional sentences are final when they are not appealed. Rather, when a trial court does not exercise its discretion on remanded issues, those issues become final for

purposes of reviewability. Here, because the trial court did exercise its discretion on remand to determine whether an exceptional sentence was appropriate, the issue became reviewable and is not "final."

The Effect of *Collicott*

Brown also argues that collateral estoppel applies based on *State v. Collicott*, 118 Wn.2d 649, 827 P.2d 263 (1992). Brown asserts the lead opinion's discussion on collateral estoppel is applicable as it is factually analogous to the instant case.[2] In *Collicott*, the trial court, in its original sentencing, could have imposed an exceptional sentence but did not. *Id.* at 652. The defendant appealed, and the case was remanded to the trial court for resentencing. At the resentencing, the trial court learned that the defendant had a stayed charge pending until resolution of the case. *Id.* at 653. The trial court imposed an exceptional sentence at rehearing based on deliberate cruelty. *Id.* at 653-54. This court, in its lead opinion, reversed, holding that the defendant's offender score was not properly calculated and the trial court was collaterally estopped from imposing the exceptional sentence. It is the court's discussion that collateral estoppel applies to exceptional sentences that Brown relies on.

But Brown's reliance on this is misguided. First, the collateral estoppel discussion did not command a majority of the court.[3] As subsequent case law has held, the collateral

---

[2] Brown also seeks clarification as to the weight that should be placed on the lead opinion in *Collicott*. The lead opinion in *Collicott* stated that the court should be collaterally estopped in imposing an exceptional sentence on resentencing.

[3] Only four justices of this court, Justices Smith, Utter, and Dolliver, and Chief Justice Dore, subscribed to this holding. Five justices, Justices Durham, Andersen, Brachtenbach, and Guy, and Justice Pro Tem Callow, specifically disavowed the collateral estoppel holding as "go[ing]

estoppel analysis is dicta and is not binding on this court. *See Harrison*, 148 Wn.2d 550; *Tili*, 148 Wn.2d 350. Second, the facts in *Collicott* are quite distinct from the instant case.

In *Collicott*, the trial court imposed an exceptional sentence upon resentencing based on deliberate cruelty. 118 Wn.2d at 654. The trial court could have imposed an exceptional sentence based on deliberate cruelty at the initial sentencing but chose not to. *Id.* at 653. The lead opinion stated that collateral estoppel applied where the court could have imposed an exceptional sentence based on the same factor that it relied on at resentencing. *Id.* at 661.

Brown argues that the same situation is presented here; the trial court could have imposed an exceptional sentence based on the "free crime" rule but chose not to, triggering collateral estoppel. But Brown overlooks another part of the lead opinion in *Collicott* in which the court suggested that a trial court may impose an exceptional standard based on the "clearly too lenient" standard (now the "free crime" rule) upon resentencing. *Id.* at 659-60.

Judicial Vindictiveness

Brown next argues that the exceptional sentence imposed by the trial court at the resentencing hearing is presumptively vindictive. Generally, a trial judge may impose a new sentence that is greater or less than the sentence originally imposed based on events subsequent to the first trial that may throw new light on the defendant's life, health,

---

beyond what is necessary to resolve this case." *Collicott*, 118 Wn.2d at 670 (Durham, J., concurring).

habits, conduct, and mental and moral propensities. *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). But the "imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy [is] a violation of due process of law." *Id.* at 724. The Court in *Pearce* held that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for . . . doing so must affirmatively appear." *Id.* at 726. Such reasons must be based on "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.*

For years, *Pearce* seemed to stand for a sweeping rule that applied a presumption of judicial vindictiveness whenever a new sentence was harsher than the original sentence imposed. However, the scope of the rule set out in *Pearce* has been substantially narrowed over the years. In *Alabama v. Smith*, the defendant originally was sentenced based on a guilty plea. 490 U.S. 794, 795, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). The defendant successfully had his guilty plea vacated, and the case proceeded to trial. *Id.* After the trial the defendant was convicted and resentenced, this time to a life sentence. *Id.* at 796-97. The defendant argued there was a presumption of vindictiveness under *Pearce*. The Supreme Court disagreed, stating that "subsequent cases have made clear that [*Pearce*'s] presumption of vindictiveness 'do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial.'" *Id.* at 799 (second alteration in original) (quoting *Texas v. McCullough*, 475 U.S. 134, 138, 106 S. Ct. 976, 89 L. Ed. 2d 104 (1986)). Rather, the presumption applies only in "[s]uch circumstances . . . in which there is a 'reasonable likelihood' that the increase in sentence is the product

of actual vindictiveness on the part of the sentencing authority." *Id.* (citation omitted) (quoting *United States v. Goodwin*, 457 U.S. 368, 373, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982)). When there is no reasonable likelihood, the defendant must prove actual vindictiveness. *Id.* at 799-800. The Court later went on to hold that the presumption does not apply where a greater penalty is imposed after trial than was imposed after the guilty plea because "the judge may gather a fuller appreciation of the nature and extent of the crimes charged [at trial]." *Id.* at 801.

The Supreme Court has since declined to apply the *Pearce* presumption in a number of cases. *See, e.g., McCullough*, 475 U.S. 134 (holding the presumption does not apply where retrial that resulted in the harsher sentence was initiated because the trial judge herself concluded a new trial was warranted based on prosecutorial misconduct); *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973) (*Pearce* presumption does not apply when new jury at retrial imposes a harsher penalty than the original jury); *Colten v. Kentucky*, 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972) (presumption does not apply where de novo trial in general criminal jurisdiction courts imposes a harsher sentence than inferior court did at original sentence).

Under *Pearce*, it appears the presumption of vindictiveness does not apply since the subsequent aggregate sentence was substantially lower than the original sentence.[4]

---

[4] The dissent argues we should apply the *Pearce* presumption because our Sentencing Reform Act of 1981(SRA) requires courts to consider only the "real facts" of the crimes at sentencing, RCW 9.94A.530(2), distinct from the federal sentencing guidelines, which allow courts to consider acquitted conduct. Dissent at 8 (citing 18 U.S.C. § 3661). In essence, the dissent asserts that it was improper for the sentencing court to consider the facts and circumstances of the entire criminal transaction because some of those facts could support elements of the charges that were

However, Brown points to federal circuit cases that consider the sentence imposed on each count, not the aggregate sentence. There are essentially two schools of thought in determining whether the presumption applies—whether we compare the overall length of the new sentence to the original sentence or whether we compare the remaining sentence once the dropped convictions are factored out to the new sentence.[5] The overwhelming majority of federal circuits subscribe to the former analysis. *See, e.g., United States v. Pimienta-Redondo*, 874 F.2d 9 (1st Cir. 1989) (presumption does not apply when one count is dropped and resentencing judge increases the sentence on remaining count so the overall sentence remains the same);[6] *United States v. Nerius*, 824 F.3d 29 (3d Cir. 2016) (*Pearce* does not apply where the revised sentence is lower than that originally imposed); *United States v. Gray*, 852 F.2d 136 (4th Cir. 1988) (no possibility or appearance of vindictiveness when the second sentence is shorter overall than the first sentence);[7]

---

reversed on appeal. But the "real facts" doctrine does not require a trial court to wholly disregard facts simply because they may be used to support elements of crimes that were not charged. Rather, "[t]he SRA structures the sentencing decision to consider only the actual crime of which the defendant has been convicted, his or her criminal history, and the *circumstances surrounding the crime.*" *State v. Houf*, 120 Wn.2d 327, 333, 841 P.2d 42 (1992) (emphasis added).

In any event, the "real facts" doctrine does not apply here. The trial court, after reviewing the new offender score, found that the standard sentencing range would clearly be too lenient and would result in "some of the current offenses going unpunished." RCW 9.94A.535(2)(c). An offender score above 9 warrants an exceptional sentence. Since Brown's adjusted offender score after the reversed convictions was 11, the trial court determined an exceptional sentence was warranted. The trial court's finding did not require an examination of the facts underlying the reversed convictions.

[5] Brown characterizes the two different approaches as the "total aggregate" approach and the "modified aggregate," or "aggregate remainder," approach, respectively, in his briefing. Suppl. Br. of Pet'r at 18.

[6] This reasoning was later affirmed in *United States v. Dominguez*, 951 F.2d 412 (1st Cir. 1991).

[7] Faced with essentially the same argument presented by Brown, the Fourth Circuit affirmed its adherence to the "total aggregate" approach in *United States v. de Jesus Ventura*, 864 F.3d 301 (4th Cir. 2017).

*United States v. Cataldo*, 832 F.2d 869 (5th Cir. 1987) (no presumption when the judge sentences a defendant to the same sentence even though there are fewer remaining convictions); *United States v. Rivera*, 327 F.3d 612, 615 (7th Cir. 2003) ("we compare the *total* original punishment to the *total* punishment after resentencing in determining whether the new sentence is more severe"); *United States v. Horob*, 735 F.3d 866, 870 (9th Cir. 2013) ("presumption of vindictiveness does not apply . . . because . . . the [] court considered his overall sentence at the time of his original sentence and again on remand, and because his overall sentence was not increased"); *United States v. Sullivan*, 967 F.2d 370 (10th Cir. 1992).

Brown advocates for the "aggregate remainder" approach taken by the Second and Eleventh Circuits in *United States v. Markus*, 603 F.2d 409 (2d Cir. 1979), and *United States v. Monaco*, 702 F.2d 860 (11th Cir. 1983). In *Markus*, the defendant was sentenced to a total of 15 years on seven counts. 603 F.2d at 411. On appeal, the judge vacated two counts "'reluctantly.'" *Id.* The government filed an additional charge, on which the court sentenced the defendant to 5 years. *Id.* The defendant argued vindictiveness under the due process clause of the Fourteenth Amendment to the United States Constitution. The Court of Appeals held the appropriate analysis is to disregard the sentence originally imposed by the trial judge on the count dropped and then compare the total remaining sentence imposed to the current sentence. *Id.* at 413. Since there was no evidence on the record to justify the increase, the court found there to be vindictiveness. *Id.* at 414.

Similarly, in *Monaco*, the Court of Appeals examined a sentence that remained the same after retrial, even though there were fewer counts. *Monaco*, 702 F.2d at 883. The

court in *Monaco* also subscribed to the approach used in *Markus*. *Id.* at 885. Since the trial court did not state any reasons for the increase, the court applied the *Pearce* presumption. *Id.* However, more recently, the Eleventh Circuit discussed *Monaco* in *United States v. Fowler*, 749 F.3d 1010 (11th Cir. 2014). In *Fowler*, the court effectively repudiated the "aggregate remainder" approach taken in *Monaco*, stating, "*Monaco*'s pre-guidelines approach for gauging the severity of a new sentence relative to an old one—the aggregate remainder approach—is not binding in the post-guidelines era, which presents materially different circumstances than those involved in that case." *Id.* at 1018. That court went on further to say that "[w]hile we are obligated to follow the holdings of an earlier decision, 'the holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision.'" *Id.* at 1020 (quoting *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1031 (11th Cir. 2003)). "Because *Monaco* arose and was decided before the sentencing guidelines existed, it could not, and did not purport to, decide what approach should be used to determine when the *Pearce* presumption applies to a new sentence imposed under the guidelines regime." *Id.*

Our court has never considered which approach to adopt in determining a *Pearce* presumption of vindictiveness. However, Division One of the Court of Appeals faced that issue in *State v. Larson*, 56 Wn. App. 323, 783 P.2d 1093 (1989). In that case, the defendant's original sentence was for 363 months as a consecutive sentence. *Id.* at 325. After appeal, and upon resentencing, the trial court imposed a concurrent sentence of 360 months. *Id.* at 326. The defendant raised a presumption of vindictiveness argument, and

the Court of Appeals rejected it, stating the "revised aggregate sentence [was] less severe than his original aggregate sentence." *Id.* at 328.

Similarly, Division Two, in *State v. Ameline*, addressed the *Pearce* presumption. 118 Wn. App. 128, 75 P.3d 589 (2003). In that case, the defendant was retried three times. The first conviction resulted in a sentence of 164 months. *Id.* at 130. After appeal, the second sentence resulted in a conviction, and the court reimposed the same 164 month sentence. *Id.* at 131. The defendant appealed a third time, this time on instructional error. The case was remanded for a third trial. After his third conviction, the trial court chose to impose an exceptional sentence of 240 months. *Id.* To justify it, the trial court made written findings of fact that could have been made at the other two trials. *Id.* The Court of Appeals found that because the third sentence was harsher than the previous two overall, the *Pearce* presumption applied. *Id.* at 133. The Court of Appeals also determined the presumption was not rebutted based on the justification the trial court made on record. *Id.* Division Three has not decided a case based on judicial vindictiveness.

Given that the overwhelming majority of the federal circuits subscribe to the "total aggregate" approach and that Divisions One and Two also adopted the same, we hold the *Pearce* presumption does not arise when the total sentence upon resentencing is not greater than the original sentence imposed.

Prosecutorial Vindictiveness

Finally, Brown argues that the State's request for an exceptional sentence on remand is presumptively vindictive. The due process clause is not offended by all

14

possibilities of increased punishment upon retrial after appeal but only those that pose a realistic likelihood of vindictiveness. *Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974). The *Pearce* presumption of vindictiveness was extended to the prosecutorial context in *Blackledge*. In that case, the defendant was charged with a misdemeanor assault in an altercation with another inmate while serving another term. *Id.* at 22. After his conviction, he appealed, which under North Carolina law automatically warranted trial de novo. *Id.* Prior to the trial, the State obtained a felony assault indictment that covered the same conduct as the misdemeanor assault. The defendant pleaded guilty to the felony assault charge. *Id.* at 23. The defendant argued the *Pearce* presumption should apply in his case. *Id.* at 25. The Court agreed and held that it was not constitutionally permissible for the State to respond to the defendant's appeal by bringing a more serious charge against him. *Id.* at 28-29.

The *Pearce* presumption does not apply to all cases where a prosecutor brings more serious charges. In *Bordenkircher v. Hayes*, the Supreme Court determined that the presumption does not apply in the pretrial context during plea negotiations when the prosecution threatens and executes additional charges when plea negotiations do not result in a guilty plea. 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). The Court noted the violation "lay not in the possibility that a defendant might be deterred from the exercise of a legal right, but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." *Id.* at 363 (citations omitted). Thus, the presumption was inapplicable where there is a "'give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively

equal bargaining power.'" *Id.* at 362 (quoting *Parker v. North Carolina*, 397 U.S. 790, 809, 90 S. Ct. 1458, 25 L. Ed. 2d 785 (1970) (Brennan, J., dissenting)).

Similarly, in *Goodwin*, the Supreme Court held that a presumption of vindictiveness was not warranted when a prosecutor brings a more severe charge after a defendant has demanded a jury trial. 457 U.S. 368. The Court noted, "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 382-83.

This court has decided the issue of prosecutorial vindictiveness in the pretrial context. *See State v. Korum*, 157 Wn.2d 614, 141 P.3d 13 (2006) (plurality opinion). Similar to *Goodwin* and *Bordenkircher*, *Korum* involved guilty pleas. In that case, the prosecution threatened 32 additional charges if he did not plead guilty. *Id.* at 620-21. This court held that adding 15 counts did not constitute prosecutorial vindictiveness, finding the case was similar to *Bordenkircher* and *Goodwin*, where the defendants chose to walk away from plea negotiations. *Id.* at 635-36. Later, in *State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010), this court noted that the *Blackledge* presumption was inapplicable where, as a result of case law, the conviction was necessarily vacated, requiring the prosecution to reevaluate what charges to bring against the defendant.

Unlike cases where the prosecution chooses to add charges after a defendant exercises his right of appeal and succeeds, this case involves a sentencing recommendation. Courts should be cautious when expanding the scope of prophylactic rules. While it is possible that the prosecution decided to recommend the original

sentence as an exceptional sentence out of spite, the presumption does not apply simply because there is an opportunity for vindictiveness. There must be a *realistic likelihood of vindictiveness*. Here, the State was faced with a decision—was the length of a standard range sentence sufficient given the facts of the case?

Unlike a charging decision, imposing a sentence does not fall under the core responsibilities of a prosecutor. Ultimately, a trial court determines what sentence is appropriate. The State merely recommends what it believes to be an appropriate sentence based on the crimes. Given this important distinction, we decline to extend the *Blackledge* presumption in this context.

## CONCLUSION

We hold that collateral estoppel does not apply when a court imposes an exceptional sentence at resentencing based on the "free crime" aggravator when it chose not to impose an exceptional sentence at the first sentencing. Further, we hold that a presumption of vindictiveness is not triggered when a judge imposes a shorter overall sentence than the original or when a prosecutor recommends an exceptional sentence at resentencing when it did not recommend such a sentence at the original sentencing. We affirm the Court of Appeals.

No. 95734-7

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Owens, J._

_Stephens, J._

_Wiggins, J._

_González, J._

_Yu, J._

No. 95734-7

GORDON McCLOUD, J. (dissenting)—The majority accurately recites the

rules about the presumption of vindictiveness that arises when a postappeal

sentence for a crime exceeds the preappeal sentence for that crime. But it applies

those rules incorrectly. It errs by failing to recognize that at sentencing hearings in

Washington, judges can consider only the facts of the crime of conviction—not the

facts of other acquitted conduct, dismissed charges, or reversed convictions. This

is "offense specific" sentencing as mandated by the state legislature. Since the

legislature has mandated such offense specific sentencing, it necessarily follows

that the only offense conduct that can be considered in comparing the length of a

preappeal sentence for a crime to the length of the postappeal sentence for the

exact same crime is the conduct specific to that crime—not the conduct specific to

other dismissed or acquitted crimes.

The majority makes a different comparison; it compares the preappeal

sentence for seven crimes to the postappeal sentence for just three of those crimes,

even though convictions for four of the seven crimes were reversed. That flawed comparison leads the majority to approve postappeal sentences on the three remaining convictions that far exceed the sentences originally imposed on those same convictions, despite the absence of any new postappeal evidence to justify them.

I therefore respectfully dissent.

FACTUAL AND PROCEDURAL HISTORY

A jury found Ronald Richard Brown guilty of two counts of first degree kidnapping, two counts of first degree robbery, two counts of second degree assault, and one count of first degree burglary in 2013. Clerk's Papers (CP) at 89 (initial judgment and sentence). The superior court imposed a standard-range sentence on each of those seven counts. *Id.* at 91, 93. It explicitly declined to impose an exceptional sentence above the standard range on any count under RCW 9.94A.535(2)(c) (permitting use of high offender score as aggravating factor in certain circumstances). *See id.* at 116-18 (State's initial sentencing memorandum); Verbatim Report of Proceedings (June 21, 2016) (VRP) at 33-34.

Brown appealed. In 2015, the Court of Appeals reversed four of the seven convictions. *State v. Brown*, No. 70148-7-I, slip op. at 12-17 (Wash. Ct. App. July 27, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/701487.pdf.

2

That court ruled that an error in the jury instructions for the kidnapping charges

violated Brown's article I, section 22 and Sixth Amendment rights to notice of the

charged crimes. *Id.* at 7-9; WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. It

also held that convicting and sentencing Brown for both assault and robbery (of

each of the two victims) violated his article I, section 9 and Fifth Amendment

rights. *Brown*, slip op. at 12-17; WASH. CONST. art. I, § 9; U.S. CONST. amend. V.

In other words, it reversed four of Brown's convictions due to constitutional error.

On remand, the State declined to try Brown again on the kidnapping

charges, even though those charges carried the highest seriousness level under the

Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. VRP at 3-4; CP at

91 (initial judgment and sentence). *See generally* RCW 9.94A.515 (ascribing

seriousness levels to offenses). Instead, it moved to dismiss those charges without

prejudice, and the superior court granted that motion. VRP at 4-5; CP at 26

(motion), 25 (order).

Thus, at Brown's resentencing in 2016, only three convictions remained.

The offender scores for each of the three convictions decreased from 19 at the first

sentencing hearing to 11 at resentencing.[1] *Compare* CP at 91 (initial judgment and

---

[1] Offender scores reflect prior criminal history and other current convictions. A score is calculated for each offense, and the score for one offense might differ from the score for another offense. *See* RCW 9.94A.525; WASH.

3

sentence), *with id.* at 9 (judgment and sentence on remand). And at the resentencing hearing, the State presented no new facts. VRP at 19-27.

Nevertheless, the State argued that the court should impose the same total period of confinement that it had previously imposed because that period of confinement "adequately represented the facts in this case." *Id.* at 21-22; *see also* CP at 32-36 (State's amended sentencing memorandum on remand). But because that total period of confinement was greater than the top of the standard ranges for the three remaining convictions, the State sought exceptional sentences above the range—something it had not done at the first sentencing hearing.

The State did not focus on Brown's individual offenses when it made this argument about "the facts of this case." CP at 32-36. Rather, the State focused on reaching a predetermined total period of confinement for all of the three remaining convictions. *Id.* It offered the court multiple ways to impose a total period of confinement equivalent to the one that Brown had originally received, *id.* at 34, thus indicating that it believed "the facts of this case" included the facts of the seven original crimes.

---

STATE CASELOAD FORECAST COUNCIL, 2017 WASHINGTON STATE ADULT SENTENCING GUIDELINES MANUAL 63,
https://www.cfc.wa.gov/PublicationSentencing/SentencingManual/Adult_Sentenci
ng_Manual_2017.pdf [https://perma.cc/78SQ-AK9G].

Specifically, when the State did discuss specific facts to be considered at resentencing, it did not limit its discussion to the conduct underlying the remaining robbery and burglary convictions. It also relied on conduct underlying the reversed—and consequently unproven—kidnapping counts. For example, in arguing for the same total period of confinement, the State asserted that Brown was "the one who's responsible in this case for the fact that [the alleged kidnapping victims] had to endure the hours of confinement and the hours of fear and anxiety on the night in question and following." VRP at 25.

Brown argued against exceptional sentences. He explained that "there have been no new facts or identifiable conduct by the defendant, besides succeeding on appeal, that this court or the State could use to justify an exceptional sentence." CP at 29 (Brown's sentencing memorandum on remand).

The superior court declined to impose the same total period of confinement. But it did grant the State's request for exceptional sentences above the standard range. *Id.* at 21-22 (findings of fact and conclusions of law). The court concluded that the sentencing range resulting from Brown's number of convictions together with his criminal history did not adequately reflect his criminality, and, hence, it found "substantial and compelling reasons" to depart from the standard range for each conviction. *Id.*; RCW 9.94A.535(2)(c). As a result, Brown's sentences for

5

the two robbery convictions increased from 231 months to 279 months, and his sentence for the burglary conviction increased from 176 months to 204 months. *Compare* CP at 93 (initial judgment and sentence), *with id.* at 11 (judgment and sentence after remand).

Brown appealed the sentences. The Court of Appeals affirmed. *State v. Brown*, No. 75458-1-I (Wash. Ct. App. Mar. 12, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/754581.pdf. This court granted review. *State v. Brown*, 190 Wn.2d 1025 (2018).

## DISCUSSION

### Judicial Vindictiveness Presumptively Infected Brown's Resentencing—and the State Has Not Rebutted That Presumption

A court violates a defendant's right to due process under the Fourteenth Amendment when it imposes a "penalty upon the defendant for having successfully pursued a statutory right of appeal." *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 798-99, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989); U.S. CONST. amend. XIV. Because "[t]he existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case," *Pearce*, 395 U.S. at 725 n.20, a presumption of judicial vindictiveness

6

applies when "there is a 'reasonable likelihood' that [an] increase in [the] sentence is the product of actual vindictiveness on the part of the sentencing authority." *Smith*, 490 U.S. at 799 (quoting *United States v. Goodwin*, 457 U.S. 368, 473, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982)). When the record allows, however, the State may rebut that presumption. *Texas v. McCullough*, 475 U.S. 134, 140, 106 S. Ct. 976, 89 L. Ed. 2d 104 (1986).

Here, there is a reasonable likelihood that Brown's increased sentences were a response to—and therefore a penalty for—his success on appeal. Consequently, the presumption of judicial vindictiveness applies. And the State has not rebutted that presumption.

A.    Brown Got Longer Sentences on His Convictions after His Successful Appeal

The first step in this analysis is to determine whether the postappeal sentences were really longer than the preappeal sentences. To do that, we look to Washington sentencing law.

Our state legislature requires offense-specific sentencing. *See* ch. 9.94A RCW; WASH. STATE CASELOAD FORECAST COUNCIL, 2017 WASHINGTON STATE ADULT SENTENCING GUIDELINES MANUAL 63, https://www.cfc.wa.gov/PublicationSentencing/SentencingManual/Adult_Sentenci

ng_Manual_2017.pdf [https://perma.cc/78SQ-AK9G] ("For multiple current

offenses, separate sentence calculations are necessary for *each* offense because the

law requires that each receive a separate sentence."). In furtherance of that policy

decision, Washington's SRA requires trial courts to consider only "real facts" of

the crimes of conviction at sentencing. RCW 9.94A.530(2); *State v. Houf*, 120

Wn.2d 327, 332-34, 841 P.2d 42 (1992). In this respect, Washington's SRA

differs from the federal sentencing guidelines, which permit consideration of other

factors, including acquitted conduct. 18 U.S.C. § 3661; *United States v. Watts*, 519

U.S. 148, 151-54, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997) (per curiam).

"Real facts" are those that the State has proved or that the defendant has

affirmatively admitted. RCW 9.94A.530(2); *State v. Hunley*, 175 Wn.2d 901, 287

P.3d 584 (2012) (holding that a defendant's silence does not relieve the State of its

burden of proving sentence-enhancing facts). "The 'real facts' or 'established

facts' concept excludes consideration of either uncharged crimes or of crimes that

were charged but later dismissed." *State v. McAlpin*, 108 Wn.2d 458, 466, 740

P.2d 824 (1987) (collecting cases). Conduct that has "not resulted in convictions

. . . may not be considered at all." *Id.* at 467. Thus, the SRA precludes a

sentencing court from considering reversed convictions when it imposes a sentence

8

because reversed convictions are not convictions. *See Pearce*, 395 U.S. at 721

(observing that overturning a conviction results in "the slate [being] wiped clean").

The four reversed convictions in this case fall outside the definition of "real

facts." Those convictions were not just "wiped clean"; they were reversed due to

unconstitutionality. Under United States Supreme Court precedent, a sentencing

court cannot consider an unconstitutionally obtained conviction for any purpose.[2]

In other words, under controlling law, Brown's sentences for his three remaining

convictions could be based on only those three convictions. It is indisputable that

the superior court imposed longer sentences on each of these three convictions

after Brown's successful appeal than it did before.

B. Because Brown's Three Sentences Were Longer after Appeal Than
They Were Before, *Pearce*'s Holding—That a Presumption of
Judicial Vindictiveness Arises When the Same Sentencing Court
Increases a Sentence after Appeal without Any New Factual Basis—
Applies in This Case

*Pearce* makes clear that a presumption of judicial vindictiveness applies

when, as here, postappeal sentences exceed preappeal sentences. *Pearce* also

---

[2] *United States v. Tucker*, 404 U.S. 443, 448-49, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); *Burgett v. Texas*, 389 U.S. 109, 115, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967); *State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986).

makes clear that such vindictiveness violates the defendant's right to due process under the Fourteenth Amendment.

Pearce was convicted of assault with intent to commit rape and sentenced to 12 to 15 years in prison. 395 U.S. at 713. His conviction was later reversed by a state appellate court, and the State decided to retry him. *Id.* Pearce was convicted again, and the court imposed an 8-year prison sentence. *Id.* But "when added to the time Pearce had already spent in prison, the parties agree[d the new sentence] amounted to a longer total sentence than that originally imposed." *Id.*

The United States Supreme Court viewed the second sentence as a "more severe punishment," despite its facial appearance of leniency. *Id.* at 716. Yet the sentencing court's reasons, if any, for imposing the increased sentence were "not so dramatically clear." *Id.* at 726. And "the State [had not] offered any reason or justification for that sentence beyond the naked power to impose it." *Id.* The Court therefore presumed that the sentencing court had imposed the "heavier sentence" in response to the defendant's "having succeeded in getting his original conviction set aside." *Id.* at 723-24.

That presumptively vindictive response violated the defendant's right to due process. "Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the

10

sentence he receives after a new trial." *Id.* at 725. The Supreme Court therefore affirmed the grant of the writ of habeas corpus, holding that Pearce could not be imprisoned under the unconstitutional sentence. *Id.*

The Court also made clear, however, that an increased sentence will not always violate the defendant's right to due process. It stated, "A trial judge is not constitutionally precluded . . . from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities,'" which are all permissible sentencing factors in the federal system. *Id.* at 723 (quoting *Williams v. New York*, 337 U.S. 241, 245, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949)).[3] The Court noted that "[s]uch information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources." *Id.* Thus, new information could justify a sentence increase, but when no new information exists, a presumption of judicial vindictiveness arises.

---

[3] As discussed above, the SRA's "real facts" doctrine places additional limits on what can be considered at sentencing under the SRA.

11

No relevant new information about Brown or his crimes was presented at his resentencing, though it certainly could have been.[4] The presumption of judicial vindictiveness therefore applies in this case.

The majority holds to the contrary because it concludes that Brown's sentences were not really increased. The majority reaches that conclusion by comparing Brown's new total period of confinement to his initial total period of confinement. Majority at 13-14.

But that is not the correct comparison to make in Washington. Instead, as discussed in Part A above, Washington courts must impose a specific sentence for each specific offense of conviction based on "real facts" proved (or admitted) about that specific offense. Thus, as a matter of state law, Brown's punishment did increase because the comparison runs from a given conviction's initial sentence to the same conviction's new sentence. And because the punishment increased under state law, federal law requires that we presume that vindictiveness motivated the

---

[4] RCW 9.94.530(2) provides that "[o]n remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented." RCW 9.94A.525(22) further provides that "[p]rior convictions that were not included in criminal history or in the offender score shall be included upon any resentencing to ensure imposition of an accurate sentence."

12

harsher punishment, unless the sentencing court relied on new information to justify the harsher punishment.

The majority follows federal circuit courts of appeals that compare the "total aggregate" of prison time imposed at the two sentencing hearings. Majority at 11. But those decisions are inapt because they are based on a fundamentally different sentencing scheme—one in which the sentencing court may consider uncharged conduct, e.g., UNITED STATES SENTENCING COMMISSION GUIDELINES MANUAL 2018 § 1B1.3(a), http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2018/GLMFull.pdf [https://perma.cc/V43L-MQP6] as well as acquittals and reversed convictions. *See Watts*, 519 U.S. at 151-54. Under that sentencing scheme, federal courts consider sentences a package penalty for the crimes of conviction. *See United States v. Pimienta-Redondo*, 874 F.2d 9, 14 (1st Cir. 1989); *United States v. Gray*, 852 F.2d 136, 138 (4th Cir. 1988); *United States v. Shue*, 825 F.2d 1111, 1114-15 (7th Cir. 1987); *United States v. Bay*, 820 F.2d 1511, 1513-14 (9th Cir. 1987). Contrary to the federal model, where the "factors underlying the original sentence in a multiple count case are not necessarily altered when a defendant successfully appeals his conviction on one count," *Pimienta-Redondo*, 874 F.2d at 14, the facts *are* necessarily altered in Washington when a conviction is overturned. RCW 9.94A.530(2); *McAlpin*, 108 Wn.2d at 465-67.

13

C.     Subsequent Decisions Narrowed *Pearce*—But It Still Applies with
       Full Force to This Exact Type of Case

It is true that subsequent United States Supreme Court decisions have

limited *Pearce*. But those decisions reinforce, not undermine, the conclusion that

the presumption of judicial vindictiveness applies here.

The earliest post-*Pearce* Supreme Court decisions held that a presumption of

judicial vindictiveness does not arise when the second sentencer, whether it be

judge or jury, differs from the first sentencer. *See Chaffin v. Stynchcombe*, 412

U.S. 17, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973); *Colten v. Kentucky*, 407 U.S.

104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972). The Court noted that there is less

risk of vindictiveness when the second sentencer "is not the court that is asked to

do over what it thought it had already done correctly." *Colten*, 407 U.S. at 116-17;

*see also Chaffin*, 412 U.S. at 27. In some instances, the second sentencer may not

even have knowledge of the initial sentence. *Chaffin*, 412 U.S. at 26-27.

Accordingly, no reasonable likelihood—and therefore no presumption—of

vindictiveness exists in those situations.

Two later decisions, *McCullough* and *Smith*, underscored *Pearce*'s

cautionary statement that no presumption of judicial vindictiveness arises when the

sentencing court relies on new, previously unavailable information to impose a

harsher sentence at resentencing.

14

In *McCullough*, a defendant received a 20-year prison sentence after his first trial for murder, but a 50-year prison sentence after his second trial. 475 U.S. at 135-36. But the Court upheld the longer sentence against the defendant's *Pearce* challenge. Reviewing the record, the Court noted that the trial judge explained that she had imposed a 50-year sentence partly because of "the testimony of two new witnesses" at the second trial that had cast the defendant's conduct in a worse light. *Id.* at 143. The Court held that that testimony and other new information about the defendant's criminal history permissibly supported the increased sentence.[5] *Id.* at 144. Thus, *McCullough* clarified that the *Pearce* presumption does not apply when there is "new, probative evidence" to support the imposition of a harsher sentence at the second proceeding. *Id.* at 143.

*Smith* bolstered that conclusion. In that case, a defendant pleaded guilty to burglary and rape and received two concurrent 30-year prison sentences for the two convictions. 490 U.S. at 795-96. The defendant later argued that his plea was not knowing and voluntary, and an appellate court permitted him to withdraw the plea. *Id.* at 796.

---

[5] Additionally, as in *Colten* and *Chaffin*, *Pearce*'s "presumption [was] inapplicable because different sentencers assessed the varying sentences that [the defendant] received." *McCullough*, 475 U.S. at 140. A jury initially determined the defendant's sentence, but on retrial, the judge determined the sentence. *Id.* at 136.

15

The State then prosecuted the defendant for burglary, rape, and sodomy. *Id.*

At the trial, a cacophony of terrible facts emerged:

> [T]he victim testified that respondent had broken into her home in the middle of the night, clad only in his underwear and a ski mask and wielding a kitchen knife. Holding the knife to her chest, he had raped and sodomized her repeatedly and forced her to engage in oral sex with him. The attack, which lasted for more than an hour, occurred in the victim's bedroom, just across the hall from the room in which her three young children lay sleeping.

*Id.* On those facts, "[t]he jury returned a verdict of guilty on all three counts." *Id.*

At sentencing, "the trial judge imposed a term of life imprisonment for the burglary conviction, plus a concurrent term of life imprisonment on the sodomy conviction and a consecutive term of 150 years' imprisonment on the rape conviction." *Id.* Thus, the sentences for the burglary and rape convictions increased as compared to the initial sentences imposed for those crimes under the plea bargain. And the life sentence for the new sodomy conviction far outstripped the 30-year prison terms that the defendant had initially received for the other two convictions.

But the Supreme Court upheld the longer sentences against a *Pearce* challenge, even though the same judge had imposed both sets of sentences. The Court pointed out that "[t]he trial court [had] explained that it was imposing a harsher sentence than it had imposed following [the defendant's] guilty plea

16

because the evidence presented at trial, of which it had been unaware at the time it imposed sentence on the guilty plea, convinced it that the original sentence had been too lenient." *Id.* at 796-97. And just as the new information made a difference to the trial court, it made a difference to the Supreme Court's *Pearce* analysis. "As this case demonstrates, in the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged," it observed. *Id.* at 801 (citation omitted). The Court therefore held that when new information about the defendant's conduct comes into the record, the *Pearce* presumption does not apply. *Id.* at 802.

*Colten, Chaffin, McCullough,* and *Smith* confirm that the *Pearce* presumption applies in this case. The same superior court judge sentenced Brown both times. VRP at 33-34. The State presented no new facts at the resentencing to support the harsher exceptional sentences. In fact, Washington's "real facts" doctrine provided that there were fewer inculpatory facts than existed at the initial sentencing.

Although the superior court complied with *Pearce*'s mandate to affirmatively identify its reason for imposing harsher sentences on remand, 395 U.S. at 726, its explanation of its decision did not—and could not—generate any new facts about the crime. The court stated only a general basis for imposing

17

sentences above the standard range, and it was a basis that was even more justified

at the first sentencing when the offender scores were far higher: "I don't think it's

appropriate for you to have free crimes in relation to what happened here."[6] VRP

at 34. So that's not a new fact, either.

Neither Brown's mitigating conduct—ensuring that one of the victims

received medication during the criminal episode, *id.* at 24, 33—nor the existence of

"free crimes" changed from one proceeding to the next. If anything, the "number"

of Brown's "free crimes" decreased when his offender score dropped from 19 to 11

---

[6] RCW 9.94A.535(2)(c) permits an exceptional sentence above the standard range when "[t]he defendant has committed multiple current offenses and the defendant's offender score results in some of the current offenses going unpunished"—or, in more common parlance, when the defendant gets "free crimes." *See State v. Alvarado*, 164 Wn.2d 556, 567, 192 P.3d 345 (2008).

The Court of Appeals explained how RCW 9.94A.535(2)(c) operates in *State v. Newlun*:

> If the number of current offenses, when applied to the sentencing grid,
> results in the legal conclusion that the defendant's presumptive
> sentence is identical to that which would be imposed if the defendant
> had committed fewer current offenses, then an exceptional sentence
> may be imposed.

142 Wn. App. 730, 743, 176 P.3d 529 (2008); *see also* RCW 9.94A.510 (providing sentencing grid).

18

for the robbery and burglary convictions. In the absence of any new additional inculpatory information, *Pearce*'s presumption of judicial vindictiveness applies.[7]

The State has made no effort to rebut that presumption. *See* Suppl. Br. of Resp't at 8-11 (arguing only that the presumption does not apply). Accordingly, we must presume that Brown's right to due process has been violated, and I would reverse the decision of the Court of Appeals and remand the case for resentencing on that basis.

CONCLUSION

The Court of Appeals reversed four of Brown's seven convictions due to constitutional error. The judge then imposed a higher sentence on each of his three remaining convictions. There were no new facts to justify the new, higher sentences. We must therefore apply the *Pearce* presumption of judicial vindictiveness. The State offers only the facts of reversed convictions to rebut that presumption, and that does not suffice.

I respectfully dissent.

---

[7] Division Two has reached the same conclusion. *See State v. Ameline*, 118 Wn. App. 128, 133, 75 P.3d 589 (2003). "If the only new fact is that [the defendant] has again succeeded on appeal, the new sentence may not be more harsh than the first and second ones." *Id.* at 134.

Geods McCloud, J.